UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABBY KLEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTRIA GROUP, INC., HOWARD A. WILLARD III, and WILLIAM F. GIFFORD, JR.,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Gabby Klein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Altria Group, Inc. ("Altria" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Altria securities between December 20, 2018 and September 24, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Altria was founded in 1919 and is headquartered in Richmond, Virginia.  The Company, through its subsidiaries, manufactures and sells cigarettes, smokeless products, and wine in the United States.

3.     Altria offers, among other products and services, cigarettes, primarily under the Marlboro brand; cigars, principally under the Black & Mild brand; and moist smokeless tobacco products under the Copenhagen, Skoal, Red Seal, and Husky brands.  The Company sells its tobacco products primarily to wholesalers, including distributors; large retail organizations, such as chain stores; and the armed services.

4.     On December 20, 2018, during pre-market hours, Altria issued a press release announcing that it had signed and closed a $12.8 billion investment in JUUL Labs, Inc. ("JUUL"), the purported U.S. leader in electronic vapor (colloquially called "e-vapor") products, including e-cigarettes (the "December 2018 Press Release").  According to the December 2018 Press Release, the service agreements related to the transaction would accelerate JUUL's mission to switch adult smokers to e-vapor products.  Altria's investment represented a 35% economic interest in JUUL, valuing the company at $38 billion, with JUUL purportedly remaining fully independent.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (ii) Altria consequently failed to inform investors, or account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (iii) all of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and JUUL made it reasonably likely that Altria's investment in JUUL would have a material negative impact on the Company's reputation and operations; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      Following Altria's multi-billion dollar investment into JUUL, e-vapor products and JUUL increasingly became the subject of public and regulatory scrutiny throughout the country. Mounting skepticism, fear, and negative publicity in the media regarding e-cigarettes' safety led to increased scrutiny by government authorities into vaping products, and municipalities throughout the country began tightening sales practices related to those products.

7.      For example, on April 3, 2019, the U.S. Food and Drug Administration ("FDA") announced its investigation into nearly three dozen cases of people suffering from seizures after "vaping" (the act of consuming e-vapor products through inhalation).  Between 2010 and 2019, the FDA said it received thirty-five reports of people, especially children and young adults, experiencing seizures after using e-cigarettes.

8.      On this news, Altria's stock price fell $2.71 per share, or 4.78%, to close at $53.98 per share on April 3, 2019.

9.     Then, on August 29, 2019, the *Wall Street Journal* reported that the U.S. Federal Trade Commission ("FTC") was investigating whether JUUL used influencers and other marketing practices to appeal e-cigarettes to minors.

10.     On this news, Altria's stock price fell $1.60 per share, or 3.49%, to close at $44.25 per share on August 29, 2019.

11.     Additionally, on August 30, 2019, both the FDA and the Centers for Disease Control and Prevention ("CDC") announced that they were collaborating to investigate e-cigarette related cases of illnesses and "working tirelessly to investigate the distressing incidents of severe respiratory disease associated with use of e-cigarette products."

12.     On this news, Altria's stock price fell an additional $0.51 per share, or 1.15%, to close at $43.74 per share on August 30, 2019—a total loss of $2.11 per share, or 4.6%, since closing at $45.85 per share two trading days earlier on August 28, 2019.

13.     On September 11, 2019, news sources reported that the administration of U.S. President Donald Trump was preparing a ban on flavored e-cigarettes as federal agencies probed an outbreak of a lung problem that killed at least six people and reportedly led to the sickness of hundreds of others.   President Trump and U.S. Health Secretary Alex Azar reportedly both confirmed that a ban is possible after the vaping issues are investigated.

14.     On September 12, 2019, during after-market hours, *Reuters* reported that, "[w]ithin weeks, New Jersey could become the latest state to restrict e-cigarette use, with the governor on Thursday launching a task force to find ways to curb vaping, linked by U.S. health officials to hundreds of respiratory illnesses and a half-dozen deaths."   Additionally, that same day, the CDC reported that as of September 11, 2019, 380 confirmed cases, and probably cases of lung disease

4

associated with vaping, had been reported by thirty-six states and the U.S. Virgin Islands, with six total deaths confirmed in six states.

15.     On this news, Altria's stock price fell $2.45 per share, or 5.51%, to close at $42.01 per share on September 13, 2019.

16.     On September 23, 2019, during after-market hours, news sources began reporting that federal prosecutors in California were conducting a criminal probe into JUUL.

17.     Finally, on September 25, 2019, Altria issued a press release announcing that Philip Morris had called off discussions of a $200 billion merger with Altria due to scrutiny of the vaping industry and the Company's 35% stake in market leader JUUL, which had announced the same day that it was the subject of another federal investigation.  JUUL also announced its CEO would step down and the firm would stop all advertising in the U.S.

18.     On this news, Altria's stock price fell an additional $0.17 per share, or 0.42%, to close at $40.56 per share on September 25, 2019—a total loss of $0.32 per share, or 0.78%, since closing at $40.88 per share two trading days earlier on September 23, 2019.

19.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

20.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

22.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

23.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

24.     Plaintiff, as set forth in the attached Certification, acquired Altria securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

25.     Altria is a Virginia-registered corporation with principal executive offices located at 6601 West Broad Street, Richmond, Virginia 23230.  The Company's stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "MO."

26.     Defendant Howard A. Willard III ("Willard") has served as Altria's Chairman and CEO at all relevant times.

27.     Defendant William F. Gifford, Jr. ("Gifford") has served as Altria's Vice Chairman and Chief Financial Officer at all relevant times.

28.     Defendants Willard and Gifford are sometimes referred to herein collectively as the "Individual Defendants."

29.     The Individual Defendants possessed the power and authority to control the contents of Altria's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Altria's SEC filings and press releases alleged herein to

be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Altria, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

30.     Altria was founded in 1919 and is headquartered in Richmond, Virginia.  The Company, through its subsidiaries, manufactures and sells cigarettes, smokeless products, and wine in the United States.

31.     Altria offers, among other products and services, cigarettes, primarily under the Marlboro brand; cigars, principally under the Black & Mild brand; and moist smokeless tobacco products under the Copenhagen, Skoal, Red Seal, and Husky brands.  The Company sells its tobacco products primarily to wholesalers, including distributors; large retail organizations, such as chain stores; and the armed services.

### Materially False and Misleading Statements Issued During the Class Period

32.     The Class Period begins on December 20, 2018, when Altria issued the December 2018 Press Release, announcing that it had signed and closed its $12.8 billion investment in JUUL, the purported U.S. leader in e-vapor products, including e-cigarettes.  According to the December 2018 Press Release, "[t]he service agreements w[ould] accelerate JUUL's mission to switch adult smokers to e-vapor products[,]" thereby presumably increasing JUUL's sales and the value of

Altria's investment.  Additionally, the December 2018 Press Release highlighted that "Altria's investment represents a 35% economic interest in JUUL, valuing the company at $38 billion."

33.     The December 2018 Press Release also quoted Defendant Willard, who touted Altria's investment in JUUL as the biggest in the Company's history, and a move that the Company made in an effort to promote products that reduced harm, stating, in relevant part:

> We are taking significant action to prepare for a future where adult smokers overwhelmingly choose non-combustible products over cigarettes by investing $12.8 billion in JUUL, a world leader in switching adult smokers . . . . We have long said that providing adult smokers with superior, satisfying products **with the potential to reduce harm** is the best way to achieve tobacco harm reduction. Through JUUL, we are making the biggest investment in our history toward that goal. **We strongly believe that working with JUUL to accelerate its mission will have long-term benefits for adult smokers and our shareholders.**
>
> * * *
>
> This is a unique and compelling opportunity to invest in an extraordinary company, the fastest growing in the U.S. e-vapor category. We are excited to support JUUL's highly-talented team and offer our best-in- class services to build on their tremendous success[.]

(Emphases added.)

34.     The December 2018 Press Release also quoted JUUL's CEO, Kevin Burns, who stated, in relevant part:

> **Altria's investment sends a very clear message that JUUL's technology has given us a truly historic opportunity to improve the lives of the world's one billion adult cigarette smokers** . . . . This investment and the service agreements will accelerate our mission to increase the number of adult smokers who switch from combustible cigarettes to JUUL devices.

(Emphasis added.)

35.     Additionally, the December 2018 Press Release touted multiple purported benefits associated with Altria's investment in JUUL, which supposedly aligned with Altria's commitment to prevent harm associated with tobacco products, stating, in relevant part:

8

An Extraordinary E-vapor Company with a Strong Product Pipeline

Fueled by its unique and innovative Silicon Valley approach to product development and founded by former smokers, JUUL has rapidly built an industry-leading position by satisfying adult tobacco consumers with its differentiated e-vapor products.

JUUL has quickly grown both revenue and share, and today represents approximately 30% of the total U.S. e-vapor category.[1] JUUL has a deep innovation pipeline and currently operates in eight countries, with rapid international expansion plans.

* * *

Advances Altria's Long-Term Tobacco Harm Reduction Goal

In 2000, Altria became the first and only company in the industry to support FDA regulation of tobacco products, an important step to providing accurate and scientifically-grounded communications about reduced-risk products to smokers. Today, the FDA has regulatory authority over all tobacco products, and the FDA distinguishes between the harm associated with combustible versus non-combustible products.

Altria will participate in the e-vapor category only through JUUL. The investment complements Altria's non-combustible offerings in smokeless and heat-not-burn, upon FDA authorization of *IQOS*.

36.     Finally, the December 2018 Press Release attempted to assure investors that Altria's investment in JUUL was made with an ongoing commitment to prevent underage tobacco consumption, promising that Altria and JUUL would work together to prevent underage use of JUUL's products.  Specifically, the December 2018 Press Release stated, in relevant part:

Commitment to Underage Tobacco Prevention

Altria and JUUL are committed to preventing youth from using any tobacco products. As recent studies have made clear, youth vaping is a serious problem, which both Altria and JUUL are committed to solve. As JUUL previously said, "Our intent was never to have youth use JUUL products. But intent is not enough, the numbers are what matter, and the numbers tell us underage use of e-cigarette products is a problem."

As a result, JUUL recently began implementing a number of actions to prevent underage vaping, including stopping the sales of flavored products to retail stores,

enhancing age-verification for its online sales, eliminating social media accounts and developing further technology solutions.

JUUL believes that it cannot fulfill its mission to provide the world's one billion adult smokers with a true alternative to combustible cigarettes if youth use continues unabated. Together, JUUL and Altria will work to prevent youth usage through their announced initiatives, further technological developments and increased advocacy for raising the minimum age of purchase for all tobacco products to 21.

37.     On February 26, 2019, Altria filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K downplayed FDA concern with Altria's investment into JUUL while simultaneously touting Altria's continued commitment to preventing underage vaping.  For example, while discussing a letter received from the FDA on that point, Altria asserted to investors that the Company had assured the FDA of its continuing commitment to prevent underage vaping and would continue discussions with the FDA moving forward.  Specifically, the 2018 10-K stated, in relevant part:

The FDA announced in September 2018 that it is using its regulatory authority to address underage access and use of e-vapor products. As part of this effort, the FDA issued letters to manufacturers of certain e-vapor products, including Nu Mark and JUUL, requiring them to (1) discuss with the FDA the steps each manufacturer intends to take to address youth access and use of its e-vapor products and (2) within 60 days provide a detailed written plan to address underage access and use.

In October 2018, Altria responded to the FDA's request for a written plan setting forth the actions it was taking to address underage access and met with the FDA . . . . Later in December, Altria purchased, through a wholly owned subsidiary, a 35% economic interest in JUUL. Following the announcement of this investment, Altria requested a meeting with the FDA to discuss the transaction and its ongoing support for underage tobacco prevention. In February 2018 [*sic*], the FDA sent Altria a letter expressing concern about this investment given the rise in underage use of e-vapor products and issued a statement indicating that, if the increased trend in underage use of e-vapor products does not reverse, the FDA may unilaterally take action to address the trend. Altria responded by reaffirming its ongoing and long-standing investment in underage tobacco prevention efforts. For example, Altria is advocating raising the minimum legal age to purchase all tobacco products to 21 at

the federal and state levels to further address underage tobacco use. Altria will meet with the FDA to continue discussing underage e-vapor use.

38.     Additionally, the 2018 10-K contained merely generic, boilerplate representations regarding the risk that Altria's expected benefits from its investment in JUUL may fail to materialize in the manner or time expected, if at all.  For example, the 2018 10-K stated, in relevant part:

> [T]he expected benefits of the JUUL transaction, such as any equity earnings and receipt of cash dividends, may not materialize in the expected manner or timeframe or at all, including due to the risks encountered by JUUL in its business, such as operational risks and regulatory risks at the international, federal and state levels, including actions by the FDA; unanticipated impacts on JUUL's relationships with employees, customers, suppliers and other third parties; potential disruptions to JUUL's management or current or future plans and operations due to the JUUL transaction; or domestic or international litigation developments, investigations, or otherwise . . . . Failure to realize the expected benefits of our JUUL investment could adversely affect the value of the investment. [. . .] [I]f a qualitative assessment of impairment of our JUUL investment were to indicate that its fair value is less than its carrying value, the investment would be written down to its fair value, which could have a material adverse effect on Altria's consolidated financial position or earnings.

The foregoing risk warning was plainly a generic catch-all provision not tailored to Altria's actual known legal risks.

39.     Appended as exhibits to the 2018 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") wherein the Individual Defendants certified that "the [2018 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "the information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

40.     The statements referenced in ¶¶ 31-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (ii) Altria consequently failed to inform investors, or account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (iii) all of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and JUUL made it reasonably likely that Altria's investment in JUUL would have a material negative impact on the Company's reputation and operations; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

41.     Following Altria's multi-billion dollar investment into JUUL, e-vapor products and JUUL increasingly became the subject of scrutiny by government authorities throughout the country.  Mounting skepticism, fear, and negative publicity in the media regarding e-cigarettes' safety led to increased scrutiny by government authorities into vaping products, and municipalities throughout the country began tightening sales practices related to those products.

42.     For example, on April 3, 2019, the FDA announced its investigation into nearly three dozen cases of people suffering from seizures after vaping.  Between 2010 and 2019, the FDA said it received thirty-five reports of people, especially children and young adults, experiencing seizures after using e-cigarettes.

43.     On this news, Altria's stock price fell $2.71 per share, or 4.78%, to close at $53.98 per share on April 3, 2019.

44.     Nevertheless, Altria continued to tout the benefits of the Company's investment in JUUL.  On April 25, 2019, Altria issued a press release announcing its financial and operating

results for the first quarter of 2019 (the "1Q19 Press Release"). The 1Q19 Press Release quoted Defendant Willard, who touted Altria's recent investments, which included JUUL, as factors that would accelerate Altria's growth and long-term success, stating, in relevant part:

> After taking steps to position Altria for long-term success at the end of 2018, we entered 2019 with an evolved business platform that includes our strong core tobacco businesses and new strategic investments with tremendous potential for growth . . . . We believe we've made significant progress in the first quarter on key initiatives to realize the potential of our evolved business platform.

45.     The 1Q19 Press Release also asserted that Altria's investment into JUUL had included, among other factors, an evaluation of the following:

> [T]he possibility that the expected benefits of the transaction may not materialize in the expected manner or timeframe, if at all; the potential inaccuracy of the financial projections (including projections relating to JUUL's domestic growth and international expansion); prevailing economic, market, regulatory or business conditions, or changes in such conditions, negatively affecting the parties . . . [and] the fact that Altria's reported earnings, financial position and expected use of equity accounting and any future dividends paid by JUUL on shares owned by Altria may be adversely affected by tax and other factors, including the risks encountered (including regulatory and litigation risks) and decisions made by JUUL in its business[.]

46.     That same day, Altria filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2019 (the "1Q19 10-Q"). The 1Q19 10-Q briefly discussed ongoing litigation related to the dangers of e-vapor products, without going into detail, and while assuaging investors that Altria was already preparing responses to such lawsuits. Specifically, the 1Q19 10-Q stated, in relevant part:

> *E-vapor Litigation*
>
> In April 2019, Altria, PM USA and JUUL were named as defendants in a tobacco and health class action lawsuit filed in the United States District Court for the Middle District of Florida. The lawsuit involves JUUL e-vapor products and proposes various classes of plaintiffs. The theories of recovery include: violation of RICO; fraud; failure to warn; design defect; negligence; unjust enrichment and deceptive and unfair trade practices. Plaintiffs seek various forms of relief including

compensatory and punitive damages. Altria and PM USA are preparing their responses to the lawsuit.

47.     The 1Q19 10-Q also contained substantively the same representations as quoted in ¶¶ 37-38 above, except that the 1Q19 10-Q clarified that Altria had received the FDA letter at issue in February 2019, rather than February 2018, and excluded any representation that Altria would continue discussions with the FDA.

48.     Appended as exhibits to the 1Q19 10-Q were signed SOX certifications wherein the Individual Defendants certified that "the [1Q19 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "the information contained in the [1Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

49.     The statements referenced in ¶¶ 42-48 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (ii) Altria consequently failed to inform investors, or account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (iii) all of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and JUUL made it reasonably likely that Altria's investment in JUUL would have a material negative impact on the Company's reputation and operations; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

50.     The Company continued to tout the purported benefits of its investment in JUUL. On July 30, 2019, Altria issued a press release announcing its financial and operating results for the second quarter of 2019 (the "2Q19 Press Release").     The 2Q19 Press Release quoted Defendant Willard, who continued to describe the JUUL transaction as a factor that would contribute to Altria's future growth and success, stating, in relevant part:

> Altria delivered excellent second quarter adjusted diluted earnings per share growth of nearly 9%, driven by our core tobacco businesses . . . . We've maintained our focus on the adult tobacco consumer and believe that with our leading premium tobacco brands, U.S. commercialization rights to IQOS, investment in JUUL and pending transaction for on!, we are best positioned among tobacco peers to lead through a dynamic time in the U.S.

51.     The 2Q19 Press Release contained merely generic, boilerplate representations concerning risk factors related to Altria's investment in JUUL, including, in relevant part:

> [T]he risks generally related to our investments in JUUL and Cronos, including our inability to realize the expected benefits of our investments in the expected time frames, or at all, due to the risks encountered by our investees in their businesses, such as operational, compliance and regulatory risks at the international, federal and state levels, including actions by the FDA; [and] . . . domestic or international litigation developments, government investigations, tax disputes or otherwise; and potential impairment of our investments[.]

This risk warning, too, was plainly a generic catch-all provision not tailored to Altria's actual known legal risks.

52.     The 2Q19 10-Q also contained substantively the same representations as quoted in ¶¶ 37-38 above, except that, as with the 1Q19 10-Q, the 2Q19 10-Q clarified that Altria had received the FDA letter at issue in February 2019, rather than February 2018, and excluded any representation that Altria would continue discussions with the FDA.

53.     Appended as exhibits to the 2Q19 10-Q were signed SOX certifications wherein the Individual Defendants certified that "the [2Q19 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "the information

contained in the [2Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

54.     The statements referenced in ¶¶ 50-53 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Altria had conducted insufficient due diligence into JUUL prior to the Company's $12.8 billion investment, or 35% stake, in JUUL; (ii) Altria consequently failed to inform investors, or account for, material risks associated with JUUL's products and marketing practices, and the true value of JUUL and its products; (iii) all of the foregoing, as well as mounting public scrutiny, negative publicity, and governmental pressure on e-vapor products and JUUL made it reasonably likely that Altria's investment in JUUL would have a material negative impact on the Company's reputation and operations; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

55.     On August 29, 2019, the *Wall Street Journal* reported that the FTC was investigating whether JUUL used influencers and other marketing practices to appeal e-cigarettes to minors.

56.     On this news, Altria's stock price fell $1.60 per share, or 3.49%, to close at $44.25 per share on August 29, 2019.

57.     Additionally, on August 30, 2019, both the FDA and the CDC announced that they were collaborating to investigate e-cigarette related cases of illnesses and "working tirelessly to investigate the distressing incidents of severe respiratory disease associated with use of e-cigarette products."

16

58.    On this news, Altria's stock price fell an additional $0.51 per share, or 1.15%, to close at $43.74 per share on August 30, 2019—a total loss of $2.11 per share, or 4.6%, since closing at $45.85 per share two trading days earlier on August 28, 2019.

59.    On September 11, 2019, news sources reported that the Trump administration was preparing a ban on flavored e-cigarettes as federal agencies probe an outbreak of a lung problem that killed at least six people and reportedly led to the sickness of hundreds of others.  President Trump and U.S. Health Secretary Azar reportedly both confirmed that a ban is possible after the vaping issues are investigated.

60.    On September 12, 2019, during after-market hours, *Reuters* reported that, "[w]ithin weeks, New Jersey could become the latest state to restrict e-cigarette use, with the governor on Thursday launching a task force to find ways to curb vaping, linked by U.S. health officials to hundreds of respiratory illnesses and a half-dozen deaths."  Additionally, that same day, the CDC reported that as of September 11, 2019, 380 confirmed cases, and probably cases of lung disease associated with vaping, had been reported by thirty-six states and the U.S. Virgin Islands, with six total deaths confirmed in six states.

61.    On this news, Altria's stock price fell $2.45 per share, or 5.51%, to close at $42.01 per share on September 13, 2019.

62.    On September 23, 2019, during after-market hours, news sources began reporting that federal prosecutors in California were conducting a criminal probe into JUUL.

63.    Finally, on September 25, 2019, Altria issued a press release announcing that Philip Morris had called off discussions of a $200 billion merger with Altria due to scrutiny of the vaping industry and the Company's 35% stake in market leader JUUL, which had announced the same

day that it was the subject of another federal investigation.  JUUL also announced its CEO would step down and the firm would stop all advertising in the U.S.

64.     On this news, Altria's stock price fell an additional $0.17 per share, or 0.42%, to close at $40.56 per share on September 25, 2019—a total loss of $0.32 per share, or 0.78%, since closing at $40.88 per share two trading days earlier on September 23, 2019.

65.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Altria securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

67.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Altria securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Altria or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

68.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

69.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

70.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Altria;

- whether the Individual Defendants caused Altria to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Altria securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

72.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Altria securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Altria securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

73.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

74.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>**COUNT I**</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

75.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

76.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

77.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Altria securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Altria securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

78.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Altria securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Altria's finances and business prospects.

79.     By virtue of their positions at Altria, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

80.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Altria, the Individual Defendants had knowledge of the details of Altria's internal affairs.

81.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Altria.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Altria's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Altria securities was artificially inflated throughout the Class Period.  In ignorance of the adverse

facts concerning Altria's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Altria securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

82.     During the Class Period, Altria securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Altria securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Altria securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Altria securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

83.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

84.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

<u>COUNT II</u>

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

85.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86.     During the Class Period, the Individual Defendants participated in the operation and management of Altria, and conducted and participated, directly and indirectly, in the conduct of Altria's business affairs.  Because of their senior positions, they knew the adverse non-public information about Altria's misstatement of income and expenses and false financial statements.

87.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Altria's financial condition and results of operations, and to correct promptly any public statements issued by Altria which had become materially false or misleading.

88.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Altria disseminated in the marketplace during the Class Period concerning Altria's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Altria to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Altria within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Altria securities.

89.     Each of the Individual Defendants, therefore, acted as a controlling person of Altria. By reason of their senior management positions and/or being directors of Altria, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause,

Altria to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Altria and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

90.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Altria.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY'

Plaintiff hereby demands a trial by jury.

Dated:  October 2, 2019                                    Respectfully submitted,


                                                          POMERANTZ LLP

                                                          */s/ Jeremy A. Lieberman*
                                                          Jeremy A. Lieberman
                                                          J. Alexander Hood II
                                                          Jonathan Lindenfeld
                                                          600 Third Avenue, 20th Floor
                                                          New York, New York 10016
                                                          Telephone: (212) 661-1100

Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, Gabby Klein, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Altria Group, Inc. ("Altria" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Altria securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Altria securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in Altria securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have sought to serve as a representative party and/or filed a complaint on behalf of a class under the federal securities laws in the following actions:

- *Klein v. Ubiquiti Networks, Inc. et al*, No. 1:17-cv-07524 (S.D.N.Y. Oct. 2, 2017); and

- *Klein v. Teva Pharmaceutical Industries Limited et al*, No. 1:16-cv-08747 (S.D.N.Y. Nov. 10, 2016).

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Executed** <u>09/29/2019                         </u>
         **(Date)**


_____
        **(Signature)**


Gabby Klein                              
        **(Type or Print Name)**

**Altria Group, Inc. (MO)**                                                      **Klein, Gabby**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|----------------------|----------------------|
| 1/18/2019 | Purchase | 200 | $47.9200 |
| 7/10/2019 | Purchase | 3 | $48.5000 |